## **AFFIDAVIT**

I, Sean R. O'Malley, Special Agent of the Drug Enforcement Administration (DEA), hereinafter referred to as your Affiant, being duly sworn, state that:

1.    Your Affiant is an employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), within the meaning of Section 878(a) of Title 21, United States Code, that is, an officer who is empowered by law to conduct investigations, make arrests, execute search warrants, and seize property in connection with violations of Title 18, United States Code and Title 21, United States Code. Affiant is a Special Agent (SA) for the DEA, and has been so employed since October 9, 2015. Affiant has been assigned to the Cleveland Resident Office in Cleveland, Ohio, since November 2015.

### **TRAINING AND EXPERIENCE**

2.    Affiant received specialized training at the DEA Training Academy in Quantico, Virginia, regarding the identification of narcotic controlled substances and the operation of drug trafficking organizations.   Affiant has also been involved in the investigation of numerous individuals and organizations involved in the manufacturing, distribution, and use of controlled substances.   As a Special Agent, Affiant has also worked in an undercover capacity for the purpose of purchasing controlled substances, and has participated in the preparation of affidavits in support of numerous search and arrest warrants for violations of federal drug laws contained in Title 21, United States Code, as well as in the execution of the same.   In addition, Affiant has on numerous occasions, made seizures of contraband, conveyances, currency, drug paraphernalia, and firearms possessed or used in relation to violations of Title 21, United States Code, Section 841.   Affiant has successfully conducted numerous investigations that have

1

resulted in the arrest of numerous drug traffickers and the seizure of significant quantities of drugs and drug-related proceeds.   Affiant has further conducted surveillance operations of drug traffickers, and has interviewed numerous persons personally involved in drug trafficking. Affiant has also supervised numerous confidential sources during controlled purchases of narcotics.   Through this training and experience, Affiant has become familiar with, and has gained a thorough understanding of, the methods, manner, and means used by individuals engaged in the unlawful manufacturing, trafficking, and use of controlled substances.

3.      Based upon the above experience, your Affiant is familiar with the *modus operandi* of persons involved in illicit distribution of controlled substances as well as the terminology used by persons involved in the illicit distribution of controlled substances.   Your Affiant is aware that persons involved in the illicit distribution of controlled substances often attempt to conceal their identities as well as the locations at which drug transactions occur and where drugs and drug records are stored.   Affiant is aware that drug traffickers often have vehicles, properties, utilities, and other items purchased in the names of others and deliberately place assets in the names of spouses and relatives in order to avoid detection and to help shield the assets from seizure and forfeiture by law enforcement authorities.   Your Affiant knows that individuals engaged in organized drug distribution and sales maintain extensive contact with persons from whom they receive drugs and with whom they distribute these drugs. Maintaining extensive contact with suppliers, customers and associates requires that drug traffickers have continuous access to telephone communications, including cellular telephones (traditional and pre-paid). Your Affiant also knows that drug traffickers often use multiple phones to conduct drug trafficking activity and that drug traffickers often switch phones after using a phone for a

2

relatively short time.   Through investigation, training, and monitoring of Title III interceptions, your Affiant has also become familiar with the types and amounts of profits made by drug traffickers and the methods, language, and terms which are used to disguise the source and nature of the profits from their illegal drug sales.   Your Affiant is aware that when discussing drug activity, particularly over a phone, drug traffickers commonly attempt to disguise the true meaning of their conversations by speaking cryptically and by speaking in code.

4.     Your Affiant is aware that drug traffickers often maintain on hand at locations they occupy and/or control large amounts of U.S. currency as working capital to maintain and finance their narcotics activities and/or as profits derived from the sale of drugs. Your Affiant is also aware that drug traffickers commonly secret contraband, drug proceeds and drug records at businesses the traffickers own, operate or control. Businesses are also frequently used by drug traffickers to launder the proceeds derived from drug sales.

5.   Your Affiant is aware that it is common for drug traffickers to secret contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and/or at other locations they control, to include the residences of their associates and residences of family members.

6.   Your Affiant is aware that persons engaged in drug trafficking conceal in their residences and/or other premises they control large amounts of currency, financial instruments, precious metals and gems, jewelry, and other items of value and/or proceeds of drug transactions, including narcotics.

7.     Your Affiant is aware that some drug traffickers use their own place of residence to store drugs and/or proceeds from drug sales, and to conduct drug activity. Affiant knows that

3

other drug traffickers use locations other than their place of residence to store drugs, drug proceeds, and to conduct drug activity. Affiant knows that in places or properties where drug trafficking activity is conducted, drugs, scales, blenders, baggies, cutting agents, large amounts of cash, money counters, and other items used in preparing, packaging, selling, and transporting narcotics are commonly present. To protect drugs and/or proceeds from the sale of drugs, drug traffickers commonly maintain firearms and ammunition at their places of residence and/or other locations under their control where drugs or drug monies are stored.

8.      Your Affiant is aware that individuals involved in narcotics trafficking often maintain records linking them to their trafficking activity and their drug trafficking associates. These records may include notes, records or ledgers of narcotics sales, debts owed, past or future shipments, and other records, including telephone records, which identify customers and/or other co-conspirators.   Your Affiant knows that drug traffickers often maintain such records at their place of residence even where the residence is not being used to store drugs or to conduct drug sales or other drug activity.   As such, records may be in code and/or may appear to the drug trafficker as rather innocuous and not particularly incriminating on their face, such records are often maintained by drug traffickers for extended periods of time. Drug traffickers also commonly maintain at their places of residence and/or other properties they control photographs depicting their associates, quantities of controlled substances, firearms, currency and other assets, which photographs serve to memorialize the drug traffickers' activities and perceived accomplishments. Such photographs may also be maintained for extended periods of time and viewed innocuously by the drug trafficker.   Even where locations other than the drug traffickers place of residence are used to store drugs and the records of drug activity, records connecting the drug trafficker to

4

locations used as stash houses, to assets acquired through drug proceeds, to financial transactions conducted to hide or launder proceeds from drug sales and to safety deposit boxes or other locations where drug profits are concealed, may often be found at the drug traffickers place of residence.   Your Affiant is aware that drug trafficking is almost always conducted on a cash basis, that large-scale drug trafficking generates large sums of U.S. currency, and that courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

9.     Your Affiant makes this Affidavit in support of an application for the issuance of a complaint and arrest warrant for Luis Alfredo Espinal-Flores, who was found in possession of heroin during the execution of a search warrant at 3887 West 33rd Street, Cleveland, OH, USA 44109.

10.   Your Affiant is familiar with the facts and circumstances of the offenses described in this Affidavit based upon your Affiant's personal participation in the investigation of the **ISMAEL ACOSTA/ALFONSO RODRIGO** Drug Trafficking Organization (DTO), as well as through information obtained from other law enforcement agencies, witnesses, and reliable sources.   Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by agents and/or officers of the DEA, Ohio State Highway Patrol (OSHP), or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed.   Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS), the State of Ohio or the

National Crime Information Center (NCIC), the Ohio Law Enforcement Gateway (OHLEG)
computer system, and other known public database computer systems, by members herein
described.

11.     Your Affiant believes that, based upon the facts detailed in this Affidavit, probable
cause exists for an arrest warrant based on the following information: Since approximately May
of 2013, the DEA Cleveland Resident Office (DTO) has been investigating the drug trafficking
activities of **ISMAEL ACOSTA**, who resides within the Northern District of Ohio and oversee
the distribution of multiple kilograms of heroin. **ACOSTA**'s primary "runner," **MARIO
AMADOR-RAMIREZ**, resides at 10209 Loretta Avenue, Cleveland, Ohio. **CESAR
ZAMBRANO-ESPINAL**, residing at 3796 West 130th Street, Cleveland, Ohio, is one of
**ACOSTA**'s customers and re-distributors.

12.     Between January 2015 and August 2016, the DEA CRO has conducted court-
authorized T-III wire interception of multiple cellular telephones used by **ISMAEL ACOSTA**
and **CESAR ZAMBRANO-ESPINAL. MARIO AMADOR-RAMIREZ** was intercepted on
some of these wire interceptions.[1] The following Probable Cause section will first provide a
chronological summary of the investigation, then specific sections will address probable cause for
each Target Location.

---

1 Intercepted lines are referred to herein as [TT-__]. Wire interception and, in some instances,
electronic interception of each [TT-__] line was authorized by a U.S. District Judge in the
Northern District of Ohio. The last intercepted line was [TT-15]. U.S. District Judge Dan A.
Polster signed an order authorizing wire interception of [TT-15] on July 25, 2016. The Affidavit
in support of that order is presently under seal with the Clerk of Courts for the Northern District
of Ohio. Paragraphs 20-24 of that Affidavit include specific authorization information for every
intercepted line referenced in this Affidavit. As such, paragraphs 20-24 are incorporated herein by
reference, as is fully rewritten.

## NARCOTICS TRANSACTIONS WITH CESAR ZAMBRANO-ESPINAL AND CD-3

13. CD-3 began cooperating with law enforcement on October 6, 2016 for consideration in a currently pending drug case. CD-3 has prior arrests for felony theft, multiple drug trafficking offenses, assault on a peace officer, tampering with evidence, and possessing criminal tools. Information provided by CD-3 regarding **CESAR ZAMBRANO-ESPINAL** has been corroborated, to the extent possible, by independent investigative methods including T-III wire interception and surveillance. Based on this information, Affiant believes information provided by CD-3 is reliable.

14. In October 2016, CD-3 informed law enforcement that over the past month, he/she had been purchasing ounce quantities of heroin from an individual referred to as "C." CD-3 identified 3796 West 130th Street, Cleveland, Ohio as "C"'s residence. Affiant believes "C" is **CESAR ZAMBRANO-ESPINAL**. CD-3 stated that from about three months ago until approximately one month ago, he/she would pick up one or two ounces of heroin from C's house, located at 3796 West 130th Street, Cleveland, Ohio. CD-3 stated that beginning approximately one month ago, "C" began directing him/her to bring payment for narcotics to 3796 West 130th Street, Cleveland, Ohio, then travel to 3887 West 33rd Street, Cleveland, Ohio, to pick up the heroin from an unknown male with a pony tail. After CD-3 began cooperating, law enforcement determined that on several occasions in summer 2016, they had observed he/she make narcotics-related transactions directly from **CESAR ZAMBRANO-ESPINAL** at his residence on West 130th Street. On at least two of those occasions, **MARIO AMADOR-RAMRIEZ**, primary "runner" for **ISMAEL ACOSTA**, delivered narcotics to **CESAR ZAMBRANO-ESPINAL** just before CD-3's arrival.

15.     On August 23, 2016, at approximately 9:35 p.m., **MARIO AMADOR-**

**RAMIREZ**, using (216) 848-9314, called **ISMAEL ACOSTA**, using [TT-15]. At the time of

this call, precise location data on **AMADOR-RAMIREZ**'s phone indicated he was in the vicinity

of 4101 Clark Avenue, Cleveland, Ohio. During the call, **ACOSTA** and **AMADOR-RAMIREZ**

exchanged the following dialogue in Spanish:

 **ACOSTA**: Hello.
Ramirez: Listen.
 **ACOSTA**: What's up?
Ramirez: The uncle said, "the girl turns six."
 **ACOSTA**: It's okay, it's good.
Ramirez: Is that it?
 **ACOSTA**: Yeah dude.
Ramirez: Okay, alright then.
 **ACOSTA**: Bye.

Affiant is aware, based on training and experience, that drug traffickers often use ages of people

as code to refer to quantities of narcotics. For example, one may say "the girl turns six" to mean

someone has six kilograms of narcotics. Based on the short cryptic nature of this conversation,

Affiant believes **AMADOR-RAMIREZ** was informing **ACOSTA** that an unknown person ("the

uncle") had six units of either narcotics or narcotics proceeds. Based on **AMADOR-**

**RAMIREZ**'s location approximately sixteen minutes earlier in very close proximity to 3887

West 33rd Street, Affiant believes **AMADOR-RAMIREZ** met with "the uncle" at 3887 West 33rd

Street to either discuss or visually verify the quantity of narcotics or narcotics proceeds that "the

uncle" had.

## CONTROLLED PURCHASE FROM 3887 WEST 33RD STREET, CLEVELAND, OHIO

16.     On October 11, 2016, CD-3 participated in a controlled purchase of heroin from

**CESAR ZAMBRANO-ESPINAL** and an unknown person in Cleveland, Ohio. Prior to the

transaction, CD-3 and his/her vehicle were searched for narcotics and weapons, with negative

results. CD-3 was equipped with audio and video recording equipment. Cleveland Police Detective Maria Matos provided CD-3 with $2,300 in DEA Official Authorized Funds. CD-3 also provided an additional $2,250 of his/her own money to satisfy an existing narcotics debt with **ZAMBRANO-ESPINAL**. Under law enforcement supervision, CD-3 traveled to Cesar **ZAMBRANO-ESPINAL**'s residence, located at 3796 West 130th Street, Cleveland, Ohio. CD-3 provided **ZAMBRANO-ESPINAL** with a total of $4,500 ($50 of DEA authorized funds was returned to law enforcement after the transaction). **ZAMBRANO-ESPINAL** then told CD-3 that his "uncle" was ready for him, which CD-3 understood to mean that the unknown person at 3887 West 33rd Street, Cleveland, Ohio, had narcotics ready to provide to him/her. CD-3 departed **ZAMBRANO-ESPINAL**'s residence and met with law enforcement. Agents conducted a search of CD-3's person and vehicle a second time, with negative results for narcotics or contraband.

17.     Under law enforcement supervision, CD-3 traveled to 3887 West 33rd Street, Cleveland, Ohio. TFO Dan LaJack observed CD-3 walk to the side door, located on the north side of the residence. CD-3 met with an unknown person at the doorway for less than approximately one minute. CD-3 then met with law enforcement and turned over one plastic baggie containing a tan rock-like substance. The substance and baggie weighed approximately 52 grams. TFO LaJack conducted a field test on the tan rock-like substance with positive results for the properties of heroin.

18.     Based on the above intelligence, DEA SA Paul Stroney sought and obtained a search warrant for 3887 West 33rd Street.   On October 11, 2016, United States Magistrate Judge Thomas M. Parker of the Northern District of Ohio authorized a search warrant of the residence.

19.     Law enforcement executed the warrant at 6:01 a.m. on October 12, 2016. Upon making entry to the location, agents were met by a man with long hair, later identified as Luis

Alfredo Espinal-Flores.   He was detained along with a non-involved female.   The location was secured. Cleveland Detective Maria Matos advised, in English and Spanish, Espinal-Flores of his Miranda Rights.   Espinal-Flores advised that there was heroin in the upstairs attic space. Espinal-Flores walked agents to the upstairs area, and pointed to a fake box fireplace.   Behind this area, within a series of boxes and plastic bags, was approximately 100 grams, or roughly 2 ounces in three bags each, of a substance that agents, in their training and experience, believe is heroin.

20.   Espinal-Flores told agents that the substance in the bags recovered was heroin, and when he obtained the narcotics, he received a total of twelve bags similar to the bags located. Espinal-Flores said that he was fronted the bags by a man named "Zorro" and the agreed price was $44.50 per bag.   Affiant knows that "fronting" is an arrangement that drug dealers make with their distributors whereby the distributors pay no money upfront and instead reimburse the dealer once the bags are sold.

21.   Affiant knows that law enforcement also seized Espinal-Flores' phone.   Inside the phone, SA Hauns Charters observed a contact name of "Cesar" with a picture of Cesar Zambrano-Espinal next to the number.   Espinal-Flores told investigators that he is Cesar Zambrano-Espinal's uncle.

22.   Agents field tested the substance recovered from Espinal-Flores' residence, and it tested positive for the presence of heroin.

23.   Based on the above-detailed controlled purchase, Affiant believes that there is probable cause to arrest Luis Alfredo Espinal-Flores for possession with intent to distribute heroin, in violation of Title 21, United States Code Section 841(a)(1) and (b)(1)(C).

24.     Special Agent Sean R. O'Malley, DEA, being duly sworn according to law, deposes, and states that the facts stated in the foregoing Affidavit are true and correct to the best of his knowledge, information, and belief.

 

Sean R. O'Malley
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this /2 day of October 2016.

Thomas M. Parker
United States Magistrate Judge
Northern District of Ohio, Eastern Division